**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 03-CR-1027-LRR |
| vs. | | **ORDER** |
| SHAUN JOSEPH RUFF, | | |
| Defendant. | | |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

*II.  PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

*III. FACTUAL FINDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*IV.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

*I. INTRODUCTION*

This matter comes before the court on remand from the United States Court of Appeals for the Eighth Circuit. The sole issue is whether the Iowa Department of Narcotics Enforcement ("Iowa DNE") will obtain an impermissible double recovery if the court does not reduce the amount of restitution Defendant owes by the amount of funds Defendant forfeited in administrative proceedings. *See generally United States v. Ruff*, 420 F.3d 772 (8th Cir. 2005). The court finds there is no danger of double recovery.

*II. PRIOR PROCEEDINGS*

On October 2, 2003, the United States of America filed a one-count Information against Defendant. Defendant was charged with conspiring to distribute 500 grams or

more of cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B), 841(b)(1)(D) and 846.

Defendant pled guilty to the Information. Defendant agreed to pay $9985 in restitution to the Iowa DNE for lost controlled buy money. Defendant also agreed to forfeit his 1995 Chevy Blazer and property seized from his person upon his arrest. Defendant "reserve[d] the right to request that the value of the forfeited property be applied toward the outstanding restitution amount." The government reserved the right to resist the offset request.

On August 19, 2004, the court sentenced Defendant to 65 months' imprisonment and five years' supervised release. The court also ordered Defendant to pay restitution in the amount of $9985 to the Iowa DNE. Over Defendant's objection, the court declined to apply the net proceeds realized from the forfeiture of his property to the restitution amount.

On August 27, 2004, Defendant appealed. On August 24, 2005, the Eighth Circuit Court of Appeals reversed and remanded for a new sentencing hearing. *Ruff*, 420 F.3d at 776. The Eighth Circuit Court of Appeals held that, if Defendant can establish that the Iowa DNE received any forfeiture funds, then the court must modify its prior restitution order to prevent any "double recovery." *Id.* (citing *United States v. Manzer*, 69 F.3d 222, 230 (8th Cir. 1995)).

On January 27, 2006, the court held a hearing on the double recovery issue. Attorney Raphael Scheetz represented Defendant. AUSA Stephanie Rose represented the government. The matter is fully submitted and ready for decision.

### III.  FACTUAL FINDINGS

On six occasions between July and December of 2002, Ruff sold marijuana or cocaine to a confidential informant or undercover law enforcement officers. Ruff drove

his 1995 Chevy Blazer each time. When Ruff was arrested, officers found $1476 on his person.

The Bear Creek Narcotics Task Force ("Task Force") was the lead law enforcement agency in the investigation of Defendant. The informant's "handler" was Tyler Mower, the Chairman of the Task Force's Executive Board. After Ruff's arrest, Mike Dasso, a member of the Task Force, interviewed Ruff.

The Task Force is a cooperative effort on the part of a number of municipal, county, state and federal agencies.[1] The Task Force was created through various intergovernmental agreements, in accordance with Iowa law. *See, e.g.*, Iowa Code ch. 28D (providing for the interchange of personnel among governmental agencies). An Iowa DNE agent, a Maquoketa Police Department sergeant and an Anamosa Police Department officer led the effort to create the Task Force. The Cedar County Attorney provides legal representation for the Task Force.

The Task Force has thirteen investigators in Cedar, Jones and Jackson Counties. Six Iowa DNE agents are members of the Task Force. At the time of Ruff's arrest, three Iowa DNE agents, including Mower and Dasso, were members of the Task Force.

The Task Force is funded through two federal grants, the Byrne grant and the JAG grant. The Iowa DNE did not contribute any money as start-up capital for the Task Force, but it occasionally gives the Task Force funds for controlled buys. Grant funds have dried

---

[1] The agencies include: the Cedar County Sheriff's Office, the Tipton Police Department, the Clarence Police Department, the Jones County Sheriff's Office, the Anamosa Police Department, the Monticello Police Department, the Jackson County Sheriff's Office, the Maquoketa Police Department, the Bellevue Police Department, the Sabula Police Department, the Preston Police Department, the Marion Police Department, the DeWitt Police Department, the United States Drug Enforcement Administration and the Iowa DNE.

up and the Task Force depends upon the Iowa DNE and the United States Drug Enforcement Administration ("DEA") to provide buy money. In Ruff's case, the Iowa DNE contributed $9985 in controlled buy money. The Task Force did not reimburse the Iowa DNE for this lost buy money.

The Task Force has its own budget. The Task Force's Executive Board controls the budget. The Executive Board is composed of a DEA agent, an Iowa DNE agent and the leaders of the respective municipal and county agencies, i.e., the police chiefs and county sheriffs. Only the Task Force's Director of Operations and Coordinator can spend Task Force funds without the Executive Board's prior approval.

The Task Force has a separate forfeiture account. The money in the account is spent exclusively on training and equipment. No money in the account is ever used as controlled buy money. The Iowa DNE does not have any right to take money out of the Task Force's forfeiture account. The Iowa DNE can request that the Task Force purchase certain equipment or send an Iowa DNE agent who is a member of the Task Force to a training. If the Task Force purchases equipment at the Iowa DNE's request, the equipment remains the exclusive property of the Task Force. The Task Force has not asked for equipment in over eight years.

On February 26, 2003 and April 3, 2003, respectively, the DEA gave Ruff notice regarding the pending forfeiture of his $1476 and his Blazer. The property was eventually forfeited. On March 26, 2004 and August 13, 2004, the United States Marshal wrote checks to the Task Force in the amounts of $1090.58 and $2563.36 for the cash and the Blazer, respectively.[2] On May 6, 2004 and August 23, 2004, respectively, the Task Force

---

[2] Although $1476 was forfeited, the record reveals that the United States Marshal subtracted $122.77 for administrative expenses and sent 20% of the remainder to the

(continued…)

deposited the checks in its forfeiture fund. In sum, the Task Force received $3653.94 in forfeiture funds from Ruff's property. No forfeiture funds went to the Iowa DNE, either directly or indirectly. The funds went to the Task Force because the Task Force was the lead agency in the investigation.

## IV. ANALYSIS

In their plea agreement, the parties stipulated that Ruff would pay the Iowa DNE $9985 in buy money as restitution. The court ordered such restitution. The Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A-3664, requires a court to "order, if agreed to by the parties in a plea agreement, restitution to person other than the victim of the offense." 18 U.S.C. § 3663A(a)(3). The Eighth Circuit Court of Appeals has held that "'a defendant's agreement to pay the restitution that a district court orders is binding.'" *Ruff*, 420 F.3d at 774 (quoting *United States v. Lester*, 200 F.3d 1179, 1179 (8th Cir. 2000)).

The MVRA also states that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding . . . ." 18 U.S.C. § 3664(j)(2). On appeal, the Eighth Circuit Court of Appeals held the bar against double recovery in this statute "should operate in the context of this case to preclude the Iowa DNE from recovering a greater amount than the agency expended on controlled drug buys in Ruff's case." *Ruff*, 420 F.3d at 775 (citing *United States v. Smith*, 297 F. Supp. 2d 69, 73 (D.D.C. 2003)). The Eighth Circuit Court of Appeals ordered the court to hold a

---

[2](…continued)
federal government's asset forfeiture fund. The Blazer, although appraised at $6242, only sold for $4000. The Marshal subtracted $795.80 in expenses and sent 20% of the remainder to the federal government's asset forfeiture fund.

hearing to determine whether the Iowa DNE obtained a double recovery. "If Ruff can establish the Iowa DNE received any forfeiture funds, the district court shall modify the restitution order to prevent double recovery by the Iowa DNE." *Id.* at 776 (citing *Manzer*, 69 F.3d at 230).

There is no evidence the Iowa DNE received, either directly or indirectly, funds derived from the forfeiture of Defendant's property. The forfeiture funds went to the Task Force, except for funds retained by the United States Marshal or sent to the federal government's asset forfeiture fund. Therefore, there is no danger of double recovery on the part of the Iowa DNE on account of the court's restitution order.

Defendant nonetheless argues that "[f]or all practical purposes . . . the [Task Force] and the [Iowa DNE] are the same." Defendant points out (1) Iowa DNE agents are members of the Task Force, (2) the officer who "handled" the informant and arrested Defendant was an Iowa DNE agent and (3) the agent who interviewed Defendant after his arrest was an Iowa DNE agent. Defendant also claims the forfeiture proceeds "undoubtedly benefitted" the Iowa DNE and therefore he is entitled to an offset against any restitution he is ordered to pay to the Iowa DNE for lost controlled buy money.

As the court's factual findings make clear, the Iowa DNE and the Task Force are two distinct and separate law enforcement agencies. Although some members of the Iowa DNE are also members of the Task Force, this does not make the two agencies one and the same.

The court also finds that, because the relationship between the Task Force and the Iowa DNE is not close or symbiotic, they should not be considered the same agency for purposes of this hearing. While the Task Force may have benefitted the Iowa DNE in the past, there is no evidence in the record that the Iowa DNE received any funds derived from the administrative forfeiture of Defendant's Blazer or cash. As a consequence, there is no

6

danger of double recovery on the part of the Iowa DNE if the court does not offset the restitution order by the proceeds the Task Force received from the administrative forfeiture proceedings.

In light of the foregoing, the court holds that the MVRA does not require the court to offset Defendant's restitution order by the forfeited amount. *See Ruff*, 420 F.3d at 776 (concluding offset warranted "if Ruff can establish the Iowa DNE received any forfeiture funds"); *see also Manzer*, 69 F.3d at 230-31 (holding in a pre-MVRA case that Defendant was not entitled to an offset because as yet he had failed to establish that enforcement of the restitution order would result in a double recovery). At Defendant's resentencing, the court shall not order such an offset. In the near future, the court shall set a date and time to resentence Defendant in a manner consistent with this order.

**IT IS SO ORDERED.**

**DATED** this 2nd day of February, 2006.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA